714 July 29, 2026 No. 705

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

WESLEY BLANE WEAR,
*Defendant-Appellant.*

Coos County Circuit Court
23CR01926; A182332

Andrew E. Combs, Judge.

Submitted April 21, 2025.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Morgen E. Daniels, Chief Deputy Defender, Oregon Public Defense Commission, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Michael A. Casper, Assistant Attorney General, filed the brief for respondent.

Before Ortega, Presiding Judge, Hellman, Judge, and O'Connor, Judge.

ORTEGA, P. J.

Affirmed.

**ORTEGA, P. J.**

Defendant appeals a judgment convicting him of aggravated harassment, ORS 166.070 (Count 1); resisting arrest, ORS 162.315 (Count 2); and second-degree disorderly conduct, ORS 166.025 (Count 3). Defendant raises five assignments of error. In his first two assignments, defendant challenges his conviction for resisting arrest, which required the state to prove that defendant engaged in "the use or threatened use of violence, physical force or any other means that creates a substantial risk of physical injury to any person." ORS 162.315. Defendant argues that the trial court erred when it instructed the jury that the criminal negligence culpable mental state applied to the "creates a substantial risk of physical injury" element and refused to provide his proposed instruction that the knowing mental state applied. In his third through fifth assignments of error, defendant argues that the trial court plainly erred when it imposed the mandatory minimum fine for each count without considering his ability to pay those fines.

First, we conclude that the trial court did not err in instructing the jury because the "creates a substantial risk of physical injury" element of resisting arrest is a result element that takes a minimum culpable mental state of criminal negligence under the Oregon Criminal Code general culpability provisions in ORS 161.085 to 161.115. Second, we conclude that the trial court did not plainly err in imposing the minimum fines because ORS 161.645 does not obviously apply to the imposition of the mandatory fines under ORS 137.286. Accordingly, we affirm.

## BACKGROUND

We begin by briefly recounting the factual and procedural history and address our standard of review in each assignment of error. Defendant was arrested following an altercation with another person. Defendant had recently discontinued a mental health medication and had consumed alcohol earlier that day. His intimate partner testified that she called 9-1-1 for help because defendant was behaving erratically in a way she "had never seen before" and she believed "he needed to potentially go up to the hospital and

have a psych eval done because that wasn't the person that I knew." At some point, defendant went outside and got into a physical altercation with another man. Police arrived and witnessed the altercation and attempted to arrest defendant. Although defendant initially complied, an officer testified that during the arrest and booking, defendant yelled, spat on an officer, and flailed in the back of the squad car after being handcuffed, kicking the windows and headbutting the partition. Defendant testified that he does not recall being belligerent or spitting.

During the arrest, the officer grabbed defendant by the jaw and turned his head away, calling defendant a "fucking asshole" for spitting into his mouth, and said defendant was going to get "fucked up." Defendant testified that the police fractured his elbow and jaw. They did not call for medical assistance at any point during the arrest and booking. Defendant was charged with one count each of aggravated harassment, resisting arrest, and second-degree disorderly conduct.

Before trial, the parties discussed proposed jury instructions. ORS 162.315, defining resisting arrest, provides that a person may not "intentionally resist" someone who they know "to be a peace offer or parole and probation officer in making an arrest." That statute defines "resist" as "the use or threatened use of violence, physical force or any other means that creates a substantial risk of physical injury to any person and includes, but is not limited to, behavior clearly intended to prevent being taken into custody by overcoming the actions of the arresting officer." Defendant argued that the "creates a substantial risk of physical injury" element of resisting arrest requires the state to prove a "knowing" mental state and asked the trial court to instruct the jury that, in order to find him guilty of resisting arrest, the state had to prove that he "knew that he was creating a substantial risk of physical injury to [the officer]." The state opposed the instruction, arguing that the substantial risk element is a result element that requires the state to prove criminal negligence.

The court took the matter under advisement and, at the close of evidence, determined that the state had the

better argument and instructed the jury that, to establish the crime of resisting arrest, the state must prove beyond a reasonable doubt that defendant "intentionally resisted the peace officer in making the arrest" and "with criminal negligence created a substantial risk of physical injury to [the officer] or to himself." Defendant was convicted on all counts.

At sentencing, defendant's counsel discussed his employment and explained that his convictions would likely require his intimate partner's home daycare business to close. The court acknowledged that potential impact on defendant's family and partner and, without explicitly stating that it considered defendant's ability to pay, it imposed the minimum fine amount for each conviction and waived all attorney fees.

Defendant now appeals, assigning error to the jury instruction and challenging the court's imposition of the minimum fine amounts. We address each issue in turn.

## CULPABLE MENTAL STATE

In his first and second assignments of error, defendant challenges the trial court's instruction to the jury on the culpable mental state applicable to the "creates a substantial risk of physical injury" element of resisting arrest. We have several times assumed without deciding that the minimum culpable mental state applicable to the substantial risk element of resisting arrest is criminal negligence. *State v. Northey*, 338 Or App 378, 380, 567 P3d 480 (2025); *State v. Sell*, 328 Or App 82, 96-97, 536 P3d 1019 (2023), *rev den*, 372 Or 63 (2024); *State v. Dye*, 329 Or App 1, 10-11, 10 n 5, 540 P3d 66 (2023), *rev den*, 372 Or 437 (2024); *State v. Tow*, 321 Or App 294, 298, 515 P3d 936 (2022). We now must make that determination. We conclude that criminal negligence is the applicable minimum culpable mental state and, therefore, that the trial court did not err in giving the jury instruction.

"We review a trial court's jury instructions for legal error." *State v. Prophet*, 318 Or App 330, 332, 507 P3d 735, *rev den*, 370 Or 472 (2022). "A trial court commits reversible error when it incorrectly instructs the jury on a material

element of a claim or defense and that instructional error permits the jury to reach a legally erroneous result." *State v. Harper*, 296 Or App 125, 126, 436 P3d 44 (2019) (internal quotation marks omitted). What the state must prove about a defendant's state of mind for a resisting arrest conviction "ultimately depends on statutory construction." *State v. Owen*, 369 Or 288, 295, 505 P3d 953 (2022). To contextualize the parties' arguments, we first review the basic framework of statutory "culpable mental state" analysis as it pertains to resisting arrest.

To obtain a conviction for resisting arrest, the state must prove that a defendant acted "with a culpable mental state with respect to each material element of the offense that necessarily requires a culpable mental state." ORS 161.095(2); ORS 161.105. The element at issue in this case—"creates a substantial risk of physical injury to any person"—is material and requires an associated mental state. *Prophet*, 318 Or App at 350. There are four mental states that may apply to material elements of a crime, including, from most to least culpable, intentionally, knowingly, recklessly, and criminally negligent. *Owen*, 369 Or at 296; *see* ORS 161.085(6) - (10) (defining culpable mental states); ORS 161.115(3) (establishing hierarchy of culpable mental states). We have already determined that the mental state "intentionally" does not apply to the specific element of creating a substantial risk of physical injury. *Prophet*, 318 Or App at 350 (although the substantial risk element requires an associated mental state, "evidence of legislative intent affirmatively rebuts the presumption that 'intentionally' should be that mental state"). Because the statute does not assign an explicit mental state to the substantial risk element, we engage in a two-step analysis to determine which mental state applies. *See State v. Haltom*, 366 Or 791, 802, 472 P3d 246 (2020) (explaining two-step analysis).

First, we evaluate the statutory text, context, and legislative history to place the element into one of three categories, that is, to determine what the legislature intended as to "the *type* of element at issue": whether it is part of the conduct, a result, or a circumstance. *State v. Propp*, 345 Or App 376, 391, 583 P3d 344 (2025) (emphasis in original).

Typically, "'conduct' elements require proof of an intentional or knowing mental state, 'result' elements require proof of an intentional, reckless, or criminally negligent mental state, and 'circumstance' elements require proof of a knowing, reckless, or criminally negligent mental state." *State v. Simonov*, 358 Or 531, 539-40, 368 P3d 11 (2016); *see* ORS 161.115. Second, once we have identified the type of element and, therefore, the mental state it typically requires, we search the statutory text, context, and legislative history for "anything that either *confirms* that the legislature intended that mental state to apply or, conversely, *rebuts* the assumption created by the default rules and suggests that the legislature intended a different culpable mental state to attach." *Propp*, 345 Or App at 391 (emphases in original).

For purposes of culpable mental state analysis, at its most basic level, "conduct" is "an act or omission and its accompanying mental state," such as the act of speaking threatening words. ORS 161.085(4); *see also Propp*, 345 Or App at 389 (providing examples of conduct). We understand "result," at its most basic level, to "refer to facts external to the defendant's bodily movement that come into existence as a consequence of it—*e.g.*, another person's death or injury, another person's fear, and so on." *Propp*, 345 Or App at 389. Despite the seeming simplicity of those definitions, "the line between conduct and other elements is not always easy to draw." *Simonov*, 358 Or at 544.

"Conduct" does not only consist of the "particular bodily movement," but also "more broadly appl[ies] to other elements that describe the nature, that is, the essential character, of the prohibited act." *Id.* at 541. "Knowingly," when used as to conduct, means that a person "acts with an awareness that the conduct of the person is of a nature so described." ORS 161.085(8). "'Nature' in turn, refers to 'the essential character or constitution of something,'" and "'so described' *** directs the reader to the statute defining the offense, which describes the entire conduct proscribed by the legislature." *Simonov*, 358 Or at 540-41 (quoting *Webster's Third New Int'l Dictionary* 1507 (unabridged ed 2002)). Criminal negligence, when used with respect to a result, means that "a person fails to be aware of a substantial and

unjustifiable risk that the result will occur * * *. The risk must be of such nature and degree that the failure to be aware of it constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation." ORS 161.085(10).

Defendant argues that the substantial risk of physical injury is a conduct element because it is part of the nature or essential character of the conduct that defines the offense: "The use of force—*the conduct* that is the gravamen of the crime—must be of a particular kind or quality: force that creates a substantial risk of injury." (Emphasis in original.) In defendant's view, because conduct elements generally require an intentional or knowing mental state, but intentionally is not the applicable mental state here, that element necessarily requires a knowing mental state. Thus, in defendant's view, the state had to prove that he acted with an awareness that he was creating a substantial risk of physical injury. In the state's view, the substantial risk is the result of the conduct, not a constituent part, and thus requires only that a defendant be at least criminally negligent as to creating the substantial risk of physical injury. The state contends that the statute makes clear that there is a distinction between the conduct—violent or threatening behavior—and the result of that conduct—the substantial risk of injury.

Because that determination ultimately turns on the legislature's intent, we engage in our usual method of statutory construction. *See Prophet*, 318 Or App at 335 ("If the statute defining a criminal offense does not contain an explicit mental state, we must assess which mental state to apply by evaluating the type of element at issue. * * * Determining [the type of element] ultimately is a matter of legislative intent." (Internal quotation marks and citation omitted.)). Thus, we examine the statute's text, context, and, if useful, legislative history, *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009), as well as prior judicial constructions of the statute, *Ingle v. Matteucci*, 371 Or 413, 423, 537 P3d 895 (2023). We first categorize the element—conduct, result, or circumstance—and then search for evidence to confirm or rebut that the legislature intended the default mental state to apply.

We begin with the text of ORS 162.315 and prior judicial constructions of that statute. ORS 162.315, defining resisting arrest, provides that:

"(1)   A person commits the crime of resisting arrest if the person intentionally resists a person known by the person to be a peace officer or parole and probation officer in making an arrest.

"(2)   As used in this section:

"*****

"(c)   'Resists' means the use or threatened use of violence, physical force or any other means *that creates a substantial risk of physical injury to any person* and includes, but is not limited to, behavior clearly intended to prevent being taken into custody by overcoming the actions of the arresting officer. The behavior does not have to result in actual physical injury to an officer. Passive resistance does not constitute behavior intended to prevent being taken into custody."

(Emphasis added.)

In discussing the definition of "resists," we have previously explained that it "contains both a means and an end: 'The means includes the use of violence, physical force, or any other means. The end is a substantial risk of physical injury to any person.'" *Prophet*, 318 Or App at 348 (quoting *State v. Remsh*, 221 Or App 471, 477, 190 P3d 476 (2008)). In *Prophet*, we considered whether the "intentionally" mental state, which ORS 162.315(1) explicitly applies to the "resists" element broadly, also applied to the substantial risk element. 318 Or App at 350.[1] We observed that the statutory text "provides little guidance to suggest how the mental state in the phrase 'intentionally resists a person'" is "meant to be interpreted in relation to the means and the end components of the definition of 'resists.'" *Id*. at 348. Upon examining the legislative history of ORS 162.315, we concluded that the legislature intended "intentionally" to attach only to "the person's conduct, not to the result of that

---

[1] We note that *Prophet* did not decide whether the substantial risk element is a conduct, circumstance, or result element. However, our analysis in that case was based upon statutory construction of the same statutory provision and is relevant and helpful to our discussion here.

conduct"—*i.e.*, the underlying substantial risk element. *Id.* at 349-50. We further observed that that reading was consistent with the "crux of the crime—not to create a risk of injury, but to prevent a person from making an arrest." *Id.*

To reach that conclusion, *Prophet* considered the Criminal Law Revision Commission's official commentary,[2] specifically focusing on the following passage:

> "'Two culpability elements are found in subsection (1): The actor's conduct must be intentional, and must be accompanied by knowledge that the person resisted is a peace officer. Subsection (2) defines "resists" in terms of physical force or violence. Resistance is prohibited if it "creates a substantial risk of physical injury to *any person*," i.e., the actor, the peace officer or other persons in the immediate area.'"

318 Or App at 349 (quoting Commentary to Criminal Law Revision Commission Proposed Oregon Criminal Code, Final Draft and Report § 206, 204 (July 1970) (emphasis in Commentary)). We interpreted that passage as explaining that "the person must act intentionally and create a substantial risk of physical injury as distinct from one another," and concluded that the legislature did not mean for "intentionally"—the mental state applicable to the conduct of resisting—to apply to creating a substantial risk of physical injury. *Prophet*, 318 Or App at 349-50. Defendant has provided nothing to rebut our interpretation in *Prophet* that the legislature intended the substantial risk of physical injury as separate from the conduct of resisting, and our review of the legislative history reveals no reason to decide differently.

Although defendant summarily argues that creating a substantial risk of physical injury is part of the nature and essential character of the act because "to commit the crime of resisting arrest, a person must commit the conduct of using or threating the use of force in such a way that the person creates a substantial risk of physical injury," we

---

[2] When construing statutes drafted by the Criminal Law Revision Commission, which includes ORS 162.315, we consider "both the commentary and the discussions of the commission and its subcommittees to be relevant legislative history." *State v. Williams*, 374 Or 648, 672, 582 P3d 637 (2025) (internal quotation marks and citations omitted).

have previously noted that "[i]t could be argued, in a broad sense, that every element that is required to create criminal liability is part of the essential character of the defendant's act or omission," *Simonov*, 358 Or at 544. Here, however, the legislative history provides support for the conclusion that the legislature intended substantial risk of physical injury to be a result element rather than a conduct element.

The Commentary explains that:

"Resisting arrest is usually manifested by physical violence directed at the arresting officer. Section 206 is limited therefore to the use, or threatened use, of physical violence or other acts producing a 'substantial risk of physical injury.' *** Actual physical injury inflicted on a peace officer in the course of resisting an arrest would, of course, constitute an assault."

Commentary § 206 at 204. That is, if a defendant were to commit all elements of resisting arrest but rather than creating a *risk* of physical injury, the defendant actually physically injures an officer, the defendant has committed assault. In other words, the legislature here compares and equates the substantial risk of physical injury element of resisting arrest to the actual physical injury element of assault. *See* ORS 163.185 (a person commits first-degree assault, a Class A felony, if the person "[i]ntentionally causes serious physical injury to another by means of a deadly or dangerous weapon"); ORS 163.175 (a person commits second-degree assault, a Class B felony, if the person "[i]ntentionally or knowingly causes serious physical injury to another"); ORS 163.165 (a person commits third-degree assault, a Class C felony, if the person "[r]ecklessly causes serious physical injury to another by means of a deadly or dangerous weapon"); ORS 163.160 (a person commits fourth-degree assault, a Class A misdemeanor unless certain aggravating factors are present, if the person "[i]ntentionally, knowingly or recklessly causes physical injury to another"). The physical injury element of the assault statutes is a result element that requires the mental state of criminal negligence. *Owen*, 369 Or at 302 ("[S]econd-degree assault contains two elements, that is, that 'knowingly causes serious physical injury' should be understood as containing two elements—(1) 'causes,' or engages in an act involving physical

contact with another person, \* \* \* and (2) resultant physical injury."); *State v. McKinney/Shiffer*, 369 Or 325, 337, 505 P3d 946 (2022) (a criminal negligence mental state attaches to the physical injury element of fourth-degree assault); *State v. Allen*, 321 Or App 678, 685, 517 P3d 1055 (2022) (*Owen* applies equally to the result element of serious physical injury in first-degree assault and the result element of physical injury in first-degree criminal mistreatment; both require a minimum culpable mental state of criminal negligence); *State v. Nagy*, 346 Or App 149, 163, 585 P3d 5 (2025) (same as to third-degree assault).

Given the above considerations, we conclude that the "substantial risk" element of resisting arrest is a result element, and given the statutory default culpable mental state rules, the minimum culpable mental state is criminal negligence, unless the legislature intended something different. *See Propp*, 345 Or App at 391 (after determining the type of element, and therefore the default mental state, we search the statutory text, context, and legislative history for "anything that either *confirms* that the legislature intended that mental state to apply or, conversely, *rebuts* the assumption created by the default rules and suggests that the legislature intended a different culpable mental state to attach" (emphases in *Propp*)). Defendant did not provide any evidence that the legislature intended a mental state other than criminal negligence to apply, and we found no evidence to rebut that presumption. Moreover, context supports the interpretation that the legislature intended criminal negligence: First-, second-, and third-degree assault are all felonies, while resisting arrest is a misdemeanor. If the comparable result element of assault requires the criminal negligence standard, there is no obvious reason that the result element of resisting arrest should require something more stringent. *See Simonov*, 358 Or at 54++8 (considering that, because unauthorized use of a vehicle is a felony that carries significant consequences, it was more likely "that the legislature did not contemplate that mere criminal negligence would suffice to establish criminal liability for UUV"). We see no reason to believe that the legislature intended to treat the *risk* of physical injury element in misdemeanor

resisting arrest differently than the *actual* physical injury element in assault.

Accordingly, we conclude that the substantial risk of physical injury element in resisting arrest is a result element that takes a culpable mental state of criminal negligence. Because the trial court provided the jury with the correct instruction, it did not err.

## FINES

We turn to defendant's next three assignments of error. Defendant argues that the sentencing court plainly erred when it failed to consider his ability to pay the $400 in fines that it imposed.

Defendant argues that ORS 161.645 required the trial court to consider his ability to pay before imposing the fines.[3] Although a trial court must consider a defendant's ability to pay before imposing some fines under ORS 161.645, the imposition of minimum fines under ORS 137.286 without considering a defendant's ability to pay does not constitute plain error. *See State v. Seck*, 304 Or App 641, 643, 468 P3d 531, *rev den*, 366 Or 827 (2020) (concluding that "it is not plain from the text of the statutes that ORS 161.645 applies to fines imposed under ORS 137.286"); *State v. Shipley*, 307 Or App 263, 265, 476 P3d 971 (2020) (same).[4] Accordingly,

___

[3] Defendant primarily focuses on a line of cases concluding that when the record contains *no evidence* of a defendant's financial resources, any error in imposing fines cannot be plain because it is not apparent on the record. *See State v. Shepherd*, 302 Or App 118, 120, 459 P3d 957, *rev den*, 366 Or 552 (2020); *State v. Manoff*, 295 Or App 566, 567, 435 P3d 803 (2019); *State v. Smith*, 274 Or App 562, 568, 363 P3d 514 (2015), *rev den*, 358 Or 551 (2016); *State v. Wheeler*, 268 Or App 729, 732, 344 P3d 57 (2015). He argues that those cases are "plainly wrong" and asks that we overrule them. *State v. Civil*, 283 Or App 395, 416, 388 P3d 1185 (2017) (the "plainly wrong" requirement prevents this court from "lightly overrul[ing]" precedent but is not an impediment to reaching a "correct interpretation"). However, this is not a case in which there is no evidence of defendant's financial resources. The court heard that defendant worked full-time as a welder-fabricator and the number of his dependents, and it considered the collateral impacts of his felony conviction for aggravated harassment, ORS 166.070, on his career and on his intimate partner's business. It then imposed only the mandatory minimum fine amount and waived applicable attorney fees for each count. The court noted that it had discretion to depart from the guidelines but concluded that the foregoing evidence was insufficient to support that result. Thus, *Wheeler* and its progeny, even if treated as plainly wrong, are inapposite and do not assist defendant.

[4] Defendant does not address *Seck* and *Shipley*, nor argue that they were wrongly decided.

the trial court did not plainly err in imposing fines as defendant argues.

## CONCLUSION

We conclude that the substantial risk of physical injury element in resisting arrest is a result element, and that the state must prove that the defendant possessed a culpable mental state of criminal negligence as to that element. Because the trial court in this case provided the jury with such an instruction, it did not err. Further, the trial court did not plainly err in imposing the minimum fines under ORS 137.286 without considering defendant's ability to pay.

Affirmed.